1 | IRELL & MANELLA LLP
Layn R. Phillips (103854)
2 | Andra Barmash Greene (123931)
840 Newport Center Drive, Suite 400
3 | Newport Beach, California 92660-6324
Telephone: (949) 760-0991
4 | Facsimile: (949) 760-5200

5 | Ross H. Hyslop (149358)
McKenna Long & Aldridge LLP
6 | 750 B Street, Suite 3300
San Diego, California 92101-8105
7 | Telephone: (619) 595-5461
Facsimile: (619) 595-5450

8 |

Attorneys for Defendant Taco Bell Corp.

9 |

10 |

11 | **UNITED STATES DISTRICT COURT**

12 | **SOUTHERN DISTRICT OF CALIFORNIA**

13 |

14 | MARINA PUCHALSKI and RAJEEV
CHHIBBER, individually and on behalf of
15 | all others similarly situated,

Plaintiffs,
16 |

17 | vs.

18 | TACO BELL CORP., a California
Corporation, and DOES 1-20, inclusive,

19 | Defendants.

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

FILED

2008 AUG 29 PM 4:09

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

Case No. '08 CV 1596 L CAB

Judge

FILED BY PDF

**DECLARATION OF KARA D.
MCDONALD IN SUPPORT OF
DEFENDANT TACO BELL'S NOTICE
OF REMOVAL OF ACTION UNDER
28 U.S.C. SECTION 1332 (CLASS
ACTION FAIRNESS ACT
JURISDICTION)**

PROPOSED CLASS ACTION

On removal from California Superior
Court for the County of San Diego

Case No. GIC 870429

ORIGINAL

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership including
Professional Corporations

1923232

## DECLARATION OF KARA D. MCDONALD

I, Kara D. McDonald, declare as follows:

1.      I am associated with the law firm of Irell & Manella LLP, which represents Defendant Taco Bell Corp. in the above-captioned matter. I am a member in good standing of the State Bar of California. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.      On August 22, 2008, my colleague Andra Greene and I participated in a telephone conference with Charles Jones of McInerney & Jones and Peter Klett of Stewart, Estes, and Donnell, PLC, who are counsel for Plaintiffs in this action. During that conference, Mr. Klett and Mr. Jones confirmed that Plaintiffs were seeking to certify a different class than the class defined in the First Amended Complaint in this action and that the class they were now seeking to certify was not limited to residents and citizens of the State of California. Attached as Exhibit 1 is a true and correct copy of an August 22, 2008, email from Ms. Greene to Messrs. Jones and Klett confirming the substance of the parties' discussions.

3.      On August 26, 2008, I conducted the deposition of Jacob Dittburner at Sheboygan, Wisconsin. Because the deposition was conducted just days ago, a certified transcript of the deposition is not available. Attached hereto as Exhibit 2 are true and correct copies of excerpts from the rough transcript of Mr. Dittburner's deposition. I have reviewed the excerpts, and they accurately reflect the questions asked and answers provided at the deposition.

4.      On August 27, 2008, I conducted the deposition of Ken Orr at Madison Wisconsin. Because the deposition was conducted just days ago, a certified transcript of the deposition is not available. Attached hereto as Exhibit 3 are true and correct copies of excerpts from the rough transcript of Mr. Orr's deposition. I have reviewed the excerpts, and they accurately reflect the questions asked and answers provided at the deposition.

DECLARATION OF KARA D. MCDONALD IN SUPPORT OF TACO
BELL'S NOTICE OF REMOVAL

1923232

1    5.    Attached hereto as Exhibit 4 is a true and correct copy of the Declaration of

2  Victoria A. Furtado.

3    6.    Attached hereto as Exhibit 5 is a true and correct copy of the Declaration of

4  Tammy K. Hughes.

5    Executed on August 29, 2008, at Los Angeles, California.

6    I declare under penalty of perjury under the laws of the United States of America

7  that the foregoing is true and correct.

8

9    _____
                                      Kara D. McDonald

10

DECLARATION OF KARA D. MCDONALD IN SUPPORT OF TACO
BELL'S NOTICE OF REMOVAL

## TABLE OF CONTENTS TO EXHIBITS

| Exhibit | Description | Page No. |
|---------|-------------|----------|
| 1 | August 22, 2008, email from Ms. Greene to Messrs. Jones and Klett confirming the substance of the parties' discussions. | 4-5 |
| 2 | Excerpts from the rough transcript of Mr. Dittburner's deposition.  I have reviewed the excerpts, and they accurately reflect the questions asked and answers provided at the deposition. | 6-18 |
| 3 | Excerpts from the rough transcript of Mr. Orr's deposition. | 19-30 |
| 4 | Declaration of Victoria A. Furtado. | 31-32 |
| 5 | Declaration of Tammy K. Hughes. | 33-34 |

1923560

**EXHIBIT 1**

**McDonald, Kara**

| | |
|---|---|
| **From:** | Greene, Andra |
| **Sent:** | Friday, August 22, 2008 1:58 PM |
| **To:** | Peter Klett; Charles A. Jones |
| **Cc:** | McDonald, Kara; Cole, Aaron; McDonald, Kara |
| **Subject:** | RE: Taco Bell/Puchalski - Different class definition in motion versus first amended complaint |

Gentlemen:

This will confirm our conversation today in which you told us that the proposed class definition in your August 1, 2008 motion for class certification was a different class definition from the one contained in the first amended complaint (FAC) and the opt-out notice sent in or about March, 2007. The proposed class definition in the motion for class certification removes the language in the FAC that limits the proposed class to only California residents and citizens. You told us that you did not believe that you needed to amend the FAC to raise a different class definition from what had been alleged, but could do so via your August 1 class certification motion.

We will take this position into account as we consider our opposition.

Andra Greene
Irell & Manella LLP
840 Newport Center Drive
Suite 400
Newport Beach, CA 92660
949-760-5230
agreene@irell.com

| | |
|---|---|
| **From:** | Greene, Andra |
| **Sent:** | Thursday, August 21, 2008 1:43 PM |
| **To:** | Charles A. Jones |
| **Cc:** | 'Peter Klett'; McDonald, Kara; Cole, Aaron |
| **Subject:** | Taco Bell/Puchalski - Different class definition in motion versus first amended complaint |

We write concerning the proposed class definition set forth in Plaintiffs' recently filed Motion for Class Certification. In their First Amended Complaint ("FAC"), Plaintiffs purport to bring the instant action on behalf of the following classes:

CLASS 1: All persons **residing in the State of California as of the time of filing this Complaint** who, at any time from August 7, 2002, up until the date of entry of judgment after trial, are or were employed at any of the defendant's corporately owned fast food outlets in California as a salaried Restaurant Manager who claim that they were misclassified, and seek to recover overtime pay;

CLASS 2: All persons **residing in the State of California as of the time of filing this Complaint** who, at any time from August 7, 2002, up until the date of entry of judgment after trial, are or were employed at any of the defendant's corporately owned fast food outlets in California as a salaried Restaurant Manager who did not receive an uninterrupted, off-duty thirty (30) minute meal period, for each day in which, they worked in excess of five (5) hours.

FAC at ¶ 1 (emphasis added). Further, Plaintiffs specifically pled that the the proposed class is "**limited to California citizens only**." FAC at ¶ 8(b) (emphasis added).

In their Motion for Class Certification, Plaintiffs have purportedly expanded the proposed class definition to include individuals that did not reside in California as of the date the FAC and/or are not California citizens. Specifically, Plaintiffs seek to certify the following class and subclasses:

Class: All persons employed by Taco Bell Corp. in California as salaried restaurant employees at any time between August 2, 2002 and the date Taco Bell reclassified them as non-exempt employees.

Subclasses:

A. All persons employed by Taco Bell Corp. in California as salaried Restaurant General Managers (RGMs) at any time between August 2, 2002 and the date Taco Bell reclassified them as non-exempt employees.

Exhibit 1
Page 4

B. All persons employed by Taco Bell Corp. in California as salaried Market Training Managers (MTMs) at any time between August 2, 2002 and the date Taco Bell reclassified them as non-exempt employees.

Motion at p. Plaintiffs' Notice of Motion and Motion for Class Certification at p. 1.

It is unclear whether the expanded class definition in Plaintiffs Motion for Class Certification is a mistake, or if Plaintiffs are suddenly seeking to expand the proposed class to include individuals that were expressly excluded under the FAC. If the expansion of the proposed class was intentional, it is not properly part of the FAC. Do Plaintiffs intend to move to file an amended complaint since the operative complaint alleges a different class definition? We would like to discuss this issue with you as soon as possible as it signficantly impacts, among other things, our opposition. We need to know the answer. Please let me know if you are available for a telephone conference tomorrow -- Friday August 22 -- at 10 am PST.

Exhibit 1
Page 5

1

*****ROUGH DRAFT*****


1              VIDEOGRAPHER:  Good afternoon.  Here

2        begins media number one of the deposition of Jacob M

3        Dittburner in the matter of Marie in a Puchalski et

4        al. Versus Taco Bell corporation.  This case is in

01:00PM  5        the superior court of the state of California and

6        the case number is GI C 8 /SEFP 0429.  Today's date

7        is August 26, the time is 1:00 p.m.

8              This deposition is taking place at the

9        Holiday Inn, Sheboygan, Wisconsin.

01:00PM 10              My name is John Hanson C L V S appearing

11        on behalf of Sarnoff court reporters and legal

12        technologies locateed in I remember /SREUPBG Los

13        Angeles, San Francisco, Cal Al or Las Vegas, Nevada

14        would counsel please identify themselves forth

01:00PM 15        record after that the court reporter will swear in

16        the witness.

17              MR. KLETT:  Peter Klett.

18              MS. McDONALD:  Kara McDonald on behalf of

19        defendant taco Bell corporation.

01:00PM 20              JACOB DITTBURNER, called as a witness herein,

21        having been first duly sworn on oath, was examined

22        and testified as follows:

23                      EXAMINATION

24    BY MS. McDONALD:

01:01PM 25    Q    Can you please state your name for the record?

Exhibit 2
Page 6

16

*****ROUGH DRAFT*****

```
1        question, vague, overly broad, ambiguous.

2                THE WITNESS:  I do not have any documents

3        that have to do with Taco Bell whatsoever or any

4        /SKREUP /TUPB of job duties in my possession.

01:15PM  5   BY MS. McDONALD:

6    Q   Mr. Dittburner, do you have a resume?

7    A   I have posted a resume or given copies of resumes in

8        the past.

9    Q   Okay.

01:15PM 10   A    I don't have a resume with me today.

11   Q   Okay.  Do you have a -- when was the last time you

12       prepared a resume?

13   A   Prior to moving here to Sheboygan, I prepared a

14       resume.

01:16PM 15   Q    And approximately when was that?

16   A   2006 and the end of 2006 I believe.

17   Q   Okay.  And do you have a copy of that resume at home?

18   A   No, I do not.

19   Q   Do you have a copy of any resume in your possession,

01:16PM 20       not here today, at home, that you have prepared since

21       August 7, 2002?

22   A   No, I don't have any copies.

23   Q   And directing your attention to paragraph 3, any

24       documents relating to this litigation I believe you

01:16PM 25       testified that you had a copy of the subpoena.  Do
```

Exhibit 2
Page 7

17

*****ROUGH DRAFT*****

```
1           you have any other documents relate to go this

2           litigation?

3                   MR. KLETT:  Objection, mischaracterizes

4           his testimony.  The question's vague, ambiguous,

01:16PM 5           overly broad.

6                   THE WITNESS:  I do not have any documents

7           whatsoever.

8     BY MS. McDONALD:

9     Q     Okay.  Have you ever been a party to a lawsuit

01:17PM 10          before?

11    A     No.

12    Q     Have you ever been a member of a class action?

13    A     No.

14    Q     Where do you currently reside?

01:17PM 15    A     Currently I reside in West Bend, Wisconsin at 1438

16          Wayne road.

17    Q     And do you currently have a driver's license?

18    A     Yes.

19    Q     And what state is that driver's license issued by?

01:17PM 20    A     State of Wisconsin.

21    Q     And do you currently own a motor vehicle?

22                  MR. KLETT:  Objection, counsel can you

23          tell me the relevance of this information it

24          violates his right of privacy.

01:17PM 25                  MS. McDONALD:  I would disagree with
```

Exhibit 2
Page 8

18

\*\*\*\*\*ROUGH DRAFT\*\*\*\*\*

1        respect to the right of privacy.  As you know

2        there's been -- /KWRAO what is the relevance of

3        where his driver's license is issued.

4                    MS. McDONALD:  /AUZ know there has been an

01:17PM  5        issue that has come about due to the plaintiffs

6        altering of her class definition and limitations on

7        the class definition in her motion for class

8        certification and we are evaluating.

9                    MR. KLETT:  You can ask him where he

01:17PM 10        resided but asking him where his driver's license is

11        issued is inappropriate.

12                    MS. McDONALD:  Well, I disagree.

13                    MR. KLETT:  Move on.

14                    MS. McDONALD:  I with respect no do you

01:18PM 15        have a motor vehicle Mr. Dittburner.

16    A    No.

17    Q    Do you presently have any bank accounts?

18                    MR. KLETT:  Objection to the form of the

19        question, instruct the witness not to answer,

01:18PM 20        violation of his right of privacy has no relevance

21        to this case whatsoever.  Move on.

22    BY MS. McDONALD:

23    Q    With due respect the right of privacy, can you tell

24        me how the right of privacy is applicable?

01:18PM 25                    MR. KLETT:  Counsel how in the world does

Exhibit 2
Page 9

19

*****ROUGH DRAFT*****

1       his bank accounts, where he has a bank account, how

2       that is possibly relevant /TPO any issue in this

3       case including the state of /REZ den see at any time

4       during this litigation.  You can ask him as you have

01:18PM 5       already done so where he's lived, all right, that's

6       completely appropriate but to ask him where he has

7       bank accounts is a violation of his right of

8       privacy, it is irrelevant and I'm instructing the

9       witness not to answer, move on.

01:18PM 10              MS. McDONALD:  And /AUZ know counsel

11       residence does not strictly determine citizenship,

12       there are other indicia of domicile that courts look

13       at.

14              MR. KLETT:  Counsel I'm in the going to

01:18PM 15       argue with you I instructed the witness not to

16       answer move on.

17              MS. McDONALD:  On move okay would you mark

18       this as well and we may take this up a the a break

19       /(.

01:19PM 20  BY MS. McDONALD:

21  Q    Are you currently employed Mr. Dittburner?

22  A    Yes.

23  Q    And where are you employed?

24  A    At the sky box here in Sheboygan.

01:19PM 25  Q    The sky box and what is the address?

**Exhibit 2**
**Page 10**

20

*****ROUGH DRAFT*****


1    A    1132 -- 1132 north 8th Street.

2    Q    Okay.  And what is your title at the sky box?

3    A    I'm the head chef.

4    Q    And how long have you worked there?

01:19PM  5    A    I've worked there since -- since June.

6    Q    Okay.  And since you -- let's look briefly /TK-RBG

7         strike /THAPL?

8              Let's look briefly at your employment

9         history with Taco Bell.  When did you first apply

01:19PM  10        for a job at Taco Bell.

11              MR. KLETT:  If you recall.  Don't guess.

12              THE WITNESS:  I don't know the exact date.

13    BY MS. McDONALD:

14    Q    Can you give me an estimate?

01:20PM  15    A    I will estimate 2000.

16    Q    Okay.  And --

17              MR. KLETT:  And again, objection to the

18         form of the question to the extent that Taco Bell is

19         vague and ambiguous.  Are you talking about Taco

01:20PM  20        Bell corporate, Taco Bell franchise, what are you

21         talking about.

22              MS. McDONALD:  All of my questions here

23         today will be limited to any work experience with

24         Taco Bell corporation, not any /TRAPB /KHAOEUZ.

01:20PM  25              MR. KLETT:  Okay.  So do you understand

Exhibit 2
Page 11

INTENTIONALLY LEFT BLANK

Exhibit 2
Page 12

21

*****ROUGH DRAFT*****

1        the question so she's not asking you about when you

2        applied for work with a Taco Bell franchise.

3                THE WITNESS:  Okay.  Then I started in

4        2001 with Taco Bell corporate.

01:20PM  5   BY MS. McDONALD:

6    Q   Okay.  And what was your position when you start /W-D

7        Taco Bell corporate in 2001?

8    A   I don't -- I don't recall.

9    Q   Okay.  Were you eventually -- did you eventually work

01:21PM 10       as a restaurant general manager for Taco Bell

11        corporation?

12   A    Yes.

13   Q    And do you recall approximately when that became your

14        title?

01:21PM 15   A    I don't -- I don't know the exact date.  I'm not 100

16        percent sure of the year.

17   Q    Okay.  And if I use the term RGM to refer to a

18        restaurant general manager, will you understand that?

19   A    Yes.

01:21PM 20   Q    Okay.  And how many different Taco Bell restaurants

21        did you work in while you were an RGM for Taco Bell?

22                MR. KLETT:  Again just for point of

23        clarification she's referring to only corporately

24        owned Taco Bells.

01:21PM 25                THE WITNESS:  Okay.

Exhibit 2
Page 13

22

*****ROUGH DRAFT*****

1                    MR. KLETT:  If you know the answer to

2          that.

3                    THE WITNESS:  I don't know exact -- the

4          exact amount.  Several.

01:22PM 5    BY MS. McDONALD:

6    Q    Okay.  And you know while were you a restaurant

7          general manager for Taco Bell, did you ever work at a

8          Taco Bell franchise during that time period?

9                    MR. KLETT:  During what time period.

01:22PM 10                   MS. McDONALD:  The time period he was a

11          restaurant general manager for Taco Bell

12          corporation.

13                    MR. KLETT:  Well, now that's -- I don't

14          know how he answers that.  If he was a restaurant

01:22PM 15          general manager for Taco Bell corporate by the very

16          nature of the question he was not at restaurant

17          general manager at a franchise so the question is

18          vague, ambiguous, unintelligible rephrase into let's

19          go at it this way.

01:22PM 20    BY MS. McDONALD:

21    Q    How many -- do you recall how many Taco Bell

22          restaurants you worked at where you were the RGM for

23          that restaurant, i.e. you were not a borrowed

24          employee?

01:22PM 25                    MR. KLETT:  And again are you talking

Exhibit 2
Page 14

25

*****ROUGH DRAFT*****

1        as the RGM?

2                    MR. KLETT:  Objection, vague and

3        ambiguous.

4    A    I don't recall the number.

01:26PM  5    Q    Can you give me an estimate?

6                    MR. KLETT:  Objection, vague and

7        ambiguous.  What do you mean was assigned to.

8                    THE WITNESS:  Assigned, yeah, I don't

9        understand.

01:26PM  10                   MS. McDONALD:  Okay.

11                   MR. KLETT:  Your first question was

12       assigned to on a full-time basis /TH-RBGS question's

13       assigned to.

14                   MS. McDONALD:  If that's the ambiguity,

01:26PM  15        how many restaurants were you assigned to on a

16       full-time basis when were you working as an RGM for

17       Taco Bell corporation.

18   A    I was always on a full-time basis with Taco Bell

19       corporate.  I worked in all of these restaurants as a

01:26PM  20        full-time employee.  I don't know another way to

21       answer the question.

22   Q    Okay.  In your declaration you stated that sometimes

23       you filled in at other Taco Bell restaurants; is that

24       correct?

01:27PM  25   A    That's correct.

Exhibit 2
Page 15

26

*****ROUGH DRAFT*****

1    Q    And when you filled in at Taco Bell restaurants, were

2         you filling in in the position of an RGM?

3    A    Yes.  Yes, I was.

4    Q    And if I describe those times when you filled in at

01:27PM 5        other restaurants as you acting as an borrowed

6         employee, would you understand that?

7              MR. KLETT:  To the extent it calls for a

8         legal conclusion, I object.

9              THE WITNESS:  Borrowed.

01:27PM 10   BY MS. McDONALD:

11   Q    What I'm trying to determine is how many Taco Bell

12        restaurants were you the general manager assigned to

13        work on that, on a regular basis as opposed to the

14        number of Taco Bell restaurants where you worked as

01:27PM 15        an -- as a borrowed or a loaned employee?

16              MR. KLETT:  Objection to the form of the

17        question, vague, ambiguous, un/SPWEL /TKPWEUBL,

18        asked and answered, calls for a legal conclusion.

19              THE WITNESS:  I still don't understand.

01:28PM 20              MR. KLETT:  Teas fine.

21   BY MS. McDONALD:

22   Q    When you became an RGM, what was the first Taco Bell

23        location you were assigned to?

24   A    Store 9427.

01:28PM 25   Q    And how long did you work at store 9427?

Exhibit 2
Page 16

27

*****ROUGH DRAFT*****

1    A    I don't know.

2    Q    And where was store 9427 located?

3    A    It was in -- it was in San Diego.  I don't -- I don't

4         recall the street, Gurney villa road or something, I

01:28PM 5      don't recall the address of that.

6    Q    Okay. .  And were you subsequently transferred to a

7         different Taco Bell restaurant?

8    A    Yes.

9    Q    And what restaurant was that?

01:28PM 10   A    20676.

11   Q    And where was that restaurant located?

12   A    On bell bow avenue in San Diego.

13   Q    And do you recall approximately how long you worked

14        at the ball bow with an avenue location?

01:29PM 15   A    I worked -- I approximately three years.

16   Q    Uh-huh.  And after -- were you transferred to a

17        different restaurant after you worked at the ball bow

18        with an avenue location?

19   A    Yes.

01:29PM 20   Q    And what location were you transferred to?

21   A    9417.

22   Q    Okay.  And where was that restaurant located?

23   A    Sanity, California.

24   Q    Okay.

01:29PM 25   A    Mason /TKPWORS road.

Exhibit 2
Page 17

28

*****ROUGH DRAFT*****

1    Q    And do you recall approximately how long you worked

2         at the sanity location?

3    A    No.

4    Q    And subsequent to working at the sanity location,

01:29PM 5        were you transferred to work at another Taco Bell

6         corporate location?

7    A    During the time I was working the the ball bow with a

8         location, I also spent significant amount of time in

9         the Ramone in a Taco Bell.

01:30PM 10   Q    And what would you describe, what do you mean by a

11        significant amount of time?

12   A    Weeks at a time.

13   Q    What is a --

14   A    Sometimes being in both restaurants at the same time.

01:30PM 15       I mean at the same -- on the same day or I did that

16        with various taco bells so during the times that I

17        worked at -- we had like one home store but for some

18        reason I would go to another store and I would be

19        there for, you know, a week, two weeks, a month but I

01:30PM 20       would still have one home store.

21   Q    Okay.

22   A    Soy don't know if that would be -- would you call

23        that borrowed or not but I was /SPHROPBSable for the

24        activities of that store.

01:30PM 25   Q    Okay.  And after you -- so your home stores in order

Exhibit 2
Page 18

**EXHIBIT 3**

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SAN DIEGO

= = = = = = = = = = = = = = = = = = = = = = = = = = = =

MARINA PUCHALSKI and RAJEEV
CHHIBBER, individually, and on behalf of
all others similarly situated,

Plaintiffs,

-vs-                          Case No. GIC 870429

TACO BELL CORP., a California
Corporation, and DOES 1-20, inclusive,

Defendants.

= = = = = = = = = = = = = = = = = = = = = = = = = = = =

Videotape Deposition of:

KEN ORR

******ROUGH TRANSCRIPT******

Madison, Wisconsin

August 27, 2008

Reported by:    Lisa L. Lafler, RPR, CRR

Exhibit 3
Page 19

20

1      to this litigation?

2  A.  I do not.

3  Q.  Have you taken any notes in connection or

4      pertaining to this litigation?

5  A.  I have not.

6              MR. KLETT:  Counsel, with respect

7          to resumés, obviously that's something that

8          we requested of Taco Bell.  So if to the

9          extent that any resumé that he's mentioned

10         does exist, we would ask that it be produced

11         at this time.

12             MS. MCDONALD:  So -- well, the

13         documents that were in Mr. Orr's personnel

14         file have been produced and the resumé was

15         not --

16             MR. KLETT:  Does not include the

17         resumé.  So I assume, therefore, that Taco

18         Bell does not have possession of that

19         document.

20             MS. MCDONALD:  I have not seen one.

21 Q.  Have you ever been party to a lawsuit?

22 A.  I have not.

23 Q.  Have you ever been a member of a class action?

24 A.  No.

25 Q.  Have you ever filed any claim whether with a

Exhibit 3
Page 20

21

1        government agency or otherwise in connection with

2        your employment with Taco Bell?

3   A.   No.

4   Q.   Have you ever been involved in a dispute with Taco

5        Bell concerning your employment with them?

6   A.   No.

7                    MR. KLETT:  Objection, vague as to

8             the term "dispute"; overly broad.  Wait

9             before you answer.

10                   THE WITNESS:  Okay.

11  Q.   Let's talk a little bit about your employment with

12       Taco Bell.  When did you first become employed by

13       Taco Bell Corporation to work in a Taco Bell

14       restaurant in the State of California?

15  A.   July 2004.

16  Q.   Okay.  And what position were you hired into?

17  A.   Senior assistant manager.

18  Q.   And how long did you hold the position of senior

19       assistant manager?

20  A.   Approximately seven months.

21  Q.   And after -- were you subsequently promoted?

22  A.   Yes.

23  Q.   And what position were you promoted to?

24  A.   Restaurant general manager.

25  Q.   And when were you promoted to restaurant general

Exhibit 3
Page 21

22

```
 1        manager?

 2                    MR. KLETT:  Asked and answered.  Go

 3              ahead.  You can tell her again.

 4    A.  It was approximately May of 2005.

 5    Q.  Do you understand the term "home store" as used in

 6        connection with Taco Bell restaurants?

 7    A.  Yes.

 8    Q.  And what does that term mean?

 9    A.  The store that you are basically employed at.

10    Q.  And how many different home stores were you

11        employed at while you were an RGM?

12    A.  I'm not sure if I understand how you mean the home

13        stores.

14    Q.  Well, you testified that a home store is your --

15        the store that you're primarily employed at --

16    A.  Right.

17    Q.  -- correct?  And how many different Taco Bell

18        restaurants did you have as your home store at the

19        various times when you were employed by Taco Bell

20        Corporation?

21                    MR. KLETT:  Objection to the form

22              of the question.  Initially you were asking

23              him about Taco Bell Corporate.  Now you're

24              just using the term "Taco Bell."  So we need

25              to be clear.  Are you talking about while he
```

Exhibit 3
Page 22

23

```
 1              was employed by Taco Bell Corporate or by

 2              Taco Bell franchisees or what is the scope of

 3              your question?

 4                        MS. MCDONALD:  Well, let's clarify.

 5    Q.   Have you ever been employed by a Taco Bell

 6         franchisee?

 7    A.   Yes.

 8    Q.   And when was that?

 9    A.   It began in July of 2006.

10    Q.   And where was that franchisee?

11    A.   It was in Florence, Kentucky.

12    Q.   And was it the only Taco Bell franchisee at which

13         you've been employed?

14    A.   No.  I was also, excuse me, employed in

15         Cincinnati, Ohio.

16    Q.   And when were you employed in Cincinnati, Ohio?

17    A.   Starting October 2006.

18    Q.   And it's your understanding that those Taco Bell

19         restaurants were Taco Bell franchisees rather than

20         Taco Bell Corporate restaurants?

21    A.   That was my understanding, yes.

22                        MS. MCDONALD:  Let me mark my next

23              exhibit.  This will be Exhibit 96.

24                        (Exhibit No. 96 marked

25                          for identification)
```

Exhibit 3
Page 23

24

1    Q.   Mr. Orr, do you recognize this document?

2    A.   Yes.

3                MS. MCDONALD:   And for the record,

4          Exhibit 96 is the declaration of Ken Orr

5          executed on June 17th, 2008.

6    Q.   Mr. Orr, you just testified that you started

7          working at a Taco Bell in Florence, Kentucky, in

8          July of 2006; is that correct?

9    A.   Uh-huh.

10   Q.   And I'd like to direct --

11               MR. KLETT:   Is that yes?

12   A.   Yes.   I'm sorry.

13   Q.   And I'd like to direct your attention to paragraph

14         2 or -- paragraph 2 of your declarations on page

15         1.

16   A.   Uh-huh.   Yes.

17   Q.   And in your declaration you state that, "I worked

18         for Taco Bell Corp. in California from

19         approximately July 2004 through May 2007."   Do you

20         see that?

21   A.   I do.

22   Q.   Okay.   And how long after -- when you left Taco

23         Bell in May 2007 --

24   A.   Yes.

25   Q.   -- did you quit?

Exhibit 3
Page 24

25

1    A.  Yes, I did.

2    Q.  And why did you quit?

3    A.  I was pursuing -- I'm -- I coach junior hockey and

4        I was pursuing my coaching career.

5    Q.  And at what point did you relocate from California

6        to Kentucky?

7    A.  It was in July of 2006.

8    Q.  And how long did you live in Kentucky?

9    A.  From July 2006 to the end of October -- I'm sorry,

10       not October, August 2007.

11   Q.  And while you were -- where -- what was your

12       address when you lived in Kentucky?

13   A.  1929 Silver Leaf Drive, Hebron, Kentucky.

14                     REPORTER:  Hebron?

15                     THE WITNESS:  Hebron, H-E-B-R-O-N.

16                     REPORTER:  Thank you.

17   Q.  And while you were residing in Kentucky -- well,

18       strike that.  You stated that you started working

19       for the Taco Bell franchisee or what you believe

20       to be a franchisee in October of 2007; is that

21       correct?

22   A.  August.

23                     MR. KLETT:  Objection,

24            mischaracterizes his testimony.

25                     MS. MCDONALD:  I'm sorry.

Exhibit 3
Page 25

26

```
 1     Q.  So the date was August -- you started working for
 2         the Cincinnati location in August?
 3     A.  Oh, the Cincinnati location was October.
 4     Q.  Okay.  And I believe you testified --
 5                   MR. KLETT:  Hold on.  Can you read
 6             the question back?  Because I think the
 7             question was October 2007.  Was that correct?
 8                   (Previous questions and answer
 9             read)
10                   MR. KLETT:  She's asking you about
11             2007.
12                   THE WITNESS:  Right.
13     A.  Originally I'd started with the store in Florence,
14         Kentucky, in August of 2007, and October of 2007
15         is when I moved to the Cincinnati location.
16                   MS. MCDONALD:  Can we go off the
17             record for a brief moment?  I think there
18             might be some confusion with the date.
19                   VIDEOGRAPHER:  We are off the
20             record at 1:29 p.m.
21                   (Recess taken)
22                   VIDEOGRAPHER:  We are back on the
23             record at 1:30 p.m.
24     Q.  Okay.  So, Mr. Orr, just to clarify some dates,
25         when did you begin working at the Taco Bell
```

Exhibit 3
Page 26

27

1        restaurant in Florence, Kentucky?

2   A.   August of 2006.

3   Q.   And with respect to the Cincinnati location?

4   A.   October of 2006.

5   Q.   And I believe you might have testified earlier

6        that you started working in the Florence,

7        Kentucky, location in July 2006.  Do you recall

8        whether it was July or August?

9   A.   It was either late July or early August.

10  Q.   And subsequent -- and when was the last date you

11       worked for the Taco Bell restaurant in Cincinnati,

12       Ohio?

13  A.   I can't recall the exact date.

14  Q.   Do you recall approximately when that was?

15  A.   Approximately the first full week of May of 2007.

16  Q.   So when you state in your declaration in paragraph

17       2 that you worked for Taco Bell Corporation in

18       California from approximately July 2004 through

19       May 2007, that's not accurate, is it?

20  A.   It should have included the Florence location and

21       the Cincinnati location.

22  Q.   Okay.  And while you were residing in Kentucky did

23       you have a driver's license?

24  A.   Yes, I did.

25  Q.   And what state was that driver's license issued

Exhibit 3
Page 27

28

1       by?

2   A.  Kentucky.

3   Q.  And while you were living in Kentucky did you have

4       a motor vehicle?

5                   MR. KLETT:  Objection.  Again,

6           Counsel, you're getting -- straying very far

7           afield and getting into his personal, private

8           information that is irrelevant to this

9           lawsuit.  He's already testified as to his

10          residence, place of residence, which I

11          understand is the focus of your concern.  I'm

12          going to give you a short leash, but we're

13          not going to get into bank accounts and

14          personal information about the witness.

15                  Go ahead.  You can answer.  Do you

16          remember the question?

17  A.  Yes.  I -- I did have a vehicle, yes.

18  Q.  And where was that motor vehicle registered --

19      what state was that motor vehicle registered in?

20  A.  Kentucky.

21  Q.  And where do you currently reside?

22  A.  Stoughton, Wisconsin.

23  Q.  And how long have you resided?

24  A.  One month.

25  Q.  And why did you relocate to Stoughton, Wisconsin?

Exhibit 3
Page 28

29

1    A.   I was hired by the Wisconsin Junior Hockey League.

2    Q.   And is the Wisconsin Junior Hockey League your

3         present employer?

4    A.   Yes, it is.

5    Q.   And you maintain a residence in Stoughton,

6         Wisconsin?

7    A.   Yes.

8    Q.   And what is the address of that residence?

9    A.   1510 Kenilworth, K-E-N-I-L-W-O-R-T-H, Court,

10        Apartment Number 8.

11   Q.   And do you currently maintain a driver's license?

12             MR. KLETT:  Objection.  Instruct

13        the witness not to answer.  We're way far

14        afield.  He's already told you where he

15        lives.  He's already established where -- his

16        residency.  It's not in California.  You've

17        already got enough information and I'm going

18        to instruct the witness not to answer that

19        question.

20             MS. MCDONALD:  Is there a reason

21        the -- the reason the witness can't answer

22        with respect to Wisconsin is he did for

23        Kentucky?

24             MR. KLETT:  My -- my reasons for

25        instructing the witness are in part what I've

Exhibit 3
Page 29

30

1    already explained and that that's really all

2    I need to instruct the witness not to answer.

3    It's irrelevant and you need to move on.

4              MS. MCDONALD:  Counsel, as you

5    know, relevance is not a proper basis for an

6    instruction not to answer.

7              MR. KLETT:  Well, it's not

8    reasonably calculated to lead to relevant

9    information, so it's --

10             MS. MCDONALD:  As you know, that's

11   not a proper --

12             MR. KLETT:  It most certainly.

13             MS. MCDONALD:  -- instruction not

14   to answer.

15             MR. KLETT:  Move on.

16             MS. MCDONALD:  We will go on.

17             MR. KLETT:  And I already told you

18   it's -- it's violating his constitutional

19   right of privacy.  Where he holds a --

20   currently where he holds a driver's license

21   is just completely irrelevant and there's no

22   reason for him to disclose such private

23   information.

24             MS. MCDONALD:  And I'd like you to

25   mark this, and as with Mr. Dittburner, we may

Exhibit 3
Page 30

1   IRELL & MANELLA LLP
    Layn R. Phillips (103854)
2   Andra Barmash Greene (123931)
    840 Newport Center Drive, Suite 400
3   Newport Beach, California 92660-6324
    Telephone: (949) 760-0991
4   Facsimile: (949) 760-5200

5   Ross H. Hyslop (149358)
    McKenna Long & Aldridge LLP
6   750 B Street, Suite 3300
    San Diego, California 92101-8105
7   Telephone: (619) 595-5461
    Facsimile: (619) 595-5450
8
    Attorneys for Defendant Taco Bell Corp.
9

10                  **UNITED STATES DISTRICT COURT**

11                 **SOUTHERN DISTRICT OF CALIFORNIA**

12  MARINA PUCHALSKI and RAJEEV          )   Case No.
    CHHIBBER, individually and on behalf of all )
    others similarly situated,           )   Judge
13                                       )
               Plaintiffs,               )
14                                       )   **DECLARATION OF VICTORIA A.**
        vs.                              )   **FURTADO IN SUPPORT OF**
15                                       )   **DEFENDANT TACO BELL'S NOTICE OF**
    TACO BELL CORP., a California        )   **REMOVAL OF ACTION UNDER 28**
16  Corporation, and DOES 1-20, inclusive, )   **U.S.C. SECTION 1332 (CLASS ACTION**
                                         )   **FAIRNESS ACT JURISDICTION)**
17             Defendants.               )
                                         )
18                                       )
                                         )
19                                       )   PROPOSED CLASS ACTION
                                         )
20                                       )   On removal from California Superior
                                         )   Court for the County of San Diego
21                                       )
                                         )   Case No. GIC 870429
22                                       )
                                         )
23                                       )
                                         )
24                                       )

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1923389

---

DECLARATION OF VICTORIA A. FURTADO IN SUPPORT OF TACO
BELL'S NOTICE OF REMOVAL

Exhibit 4
Page 31

<u>DECLARATION OF VICTORIA A. FURTADO</u>

I, Victoria A. Furtado, declare as follows:

1.     I understand that this declaration is being sought by Taco Bell Corp. ("Taco Bell") in connection with a class action lawsuit filed by Marina Puchalski and Rajeev Chhibber. I freely and voluntarily provide this declaration and understand I am under no obligation to do so. I have personal knowledge of the facts set forth in this declaration, and if called as a witness, I could and would testify competently to such facts under oath.

2.     I currently reside in Bushnell, Florida.

3.     I moved from California to Bushnell, Florida in ~~June~~ July 2006.

4.     Prior to the move, I was employed by Taco Bell as a Restaurant General Manager for approximately 5 years, in restaurants located in California.

5.     I have not been back to California since ~~June~~ July 2006.

6.     I currently hold a driver's license issued by the State of Florida.

7.     My car is registered in Florida.

8.     I, along with my husband, own a home in Bushnell, Florida.

9.     When we lived in California, my husband and I owned two cars registered in California. However, we sold those two cars in or around ~~June~~ July 2006, before we moved to Florida.

Executed on August 29th, 2008, at Dade City, Florida.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Victoria A. Furtado

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1921694

Exhibit 4
Page 32

**EXHIBIT 5**

1  IRELL & MANELLA LLP
   Layn R. Phillips (103854)
2  Andra Barmash Greene (123931)
   840 Newport Center Drive, Suite 400
3  Newport Beach, California 92660-6324
   Telephone: (949) 760-0991
4  Facsimile: (949) 760-5200

5  Ross H. Hyslop (149358)
   McKenna Long & Aldridge LLP
6  750 B Street, Suite 3300
   San Diego, California 92101-8105
7  Telephone: (619) 595-5461
   Facsimile: (619) 595-5450

8

9  Attorneys for Defendant Taco Bell Corp.

10              UNITED STATES DISTRICT COURT

11          SOUTHERN DISTRICT OF CALIFORNIA

   MARINA PUCHALSKI and RAJEEV          )   Case No.
12 CHHIBBER, individually and on behalf of all )
   others similarly situated,           )   Judge
13                                       )
            Plaintiffs,                  )
14                                       )   DECLARATION OF TAMMY K.
         vs.                             )   HUGHES IN SUPPORT OF DEFENDANT
15                                       )   TACO BELL'S NOTICE OF REMOVAL
   TACO BELL CORP., a California         )   OF ACTION UNDER 28 U.S.C. SECTION
16 Corporation, and DOES 1-20, inclusive, )  1332 (CLASS ACTION FAIRNESS ACT
                                         )   JURISDICTION)
17          Defendants.                  )
                                         )
18                                       )
                                         )
19                                       )   PROPOSED CLASS ACTION
                                         )
20                                       )   On removal from California Superior
                                         )   Court for the County of San Diego
21                                       )
                                         )   Case No. GIC 870429
22                                       )
                                         )
23                                       )
                                         )
24                                       )

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations
    1923389

         DECLARATION OF TAMMY K. HUGHES IN SUPPORT OF TACO
                    BELL'S NOTICE OF REMOVAL

Exhibit 5
Page 33

### DECLARATION OF TAMMY K. HUGHES

I, Tammy K. Hughes, declare as follows:

1.      I understand that this declaration is being sought by Taco Bell Corp. ("Taco Bell") in connection with a class action lawsuit filed by Marina Puchalski and Rajeev Chhibber. I freely and voluntarily provide this declaration and understand I am under no obligation to do so. I have personal knowledge of the facts set forth in this declaration, and if called as a witness, I could and would testify competently to such facts under oath.

2.      I currently reside in Sunnyvalley, Oregon.

3.      I moved from California to Oregon in or around October 2005.

4.      Prior to the move, I was employed by Taco Bell as a Restaurant General Manager for more than 6 years, in restaurants located in California.

5.      I currently hold a driver's license issued by the State of Oregon.

6.      My car is registered in Oregon.

7.      I, along with my husband, own a home in Sunnyvalley, Oregon.

8.      When we lived in California, my husband and I owned a home in California. However, we sold the home in or around October 2005, before we moved to Oregon.

Executed on August 27, 2008, at ___*Taco Bell*___, Oregon.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_Tammy K. Hughes_
Tammy K. Hughes

- 1 -

BELL & BREWER LA LLP
1921702.1  04

Exhibit 5
Page 34