1

2

3

4

5

6

7

8

9

10

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARINA PUCHALSKI and RAJEEV CHHIBBER, individually and on behalf of all others similarly situated, | CASE NO. 08-cv-01596-MMA (CAB) |
| Plaintiff, | |
| vs. | **ORDER GRANTING PLAINTIFFS' MOTION TO REMAND** |
| TACO BELL CORP., a California Corporation, and DOES 1-20, inclusive, | [Doc. No. 11] |
| Defendant. | |

Currently before the Court is a motion to remand the above-captioned case filed by Plaintiffs Marina Puchalski and Rajeev Chhibber, individually and on behalf of all others similarly situated ("Plaintiffs").  Defendant Taco Bell Corporation opposes the motion [Doc. No. 15], and Plaintiffs filed a reply [Doc. No. 17].  The Court took the matter under submission on the pleadings and without oral argument pursuant to Civil Local Rule 7.1(d).  Having considered the parties' papers and relevant legal authority, the Court **GRANTS** Plaintiffs' motion to remand.

## I.

## BACKGROUND

Plaintiffs bring this class action against Defendant Taco Bell Corporation ("Taco Bell") on behalf of a class of Taco Bell employees allegedly injured by Taco Bell's violations of California's

Labor Code and Business and Professions Code.  (Pls.' First Am. Compl.)  Specifically, Plaintiffs allege that Taco Bell failed to pay Plaintiff employees overtime compensation or their statutorily mandated meal breaks.  (Pls.' First Am. Compl. at 3.)  It is undisputed that Taco Bell is a citizen of California - it is a California corporation doing business in the State of California with its corporate headquarters located in Irvine, California.  (Pl.'s First Am. Compl. at 3; Defs.' Opp'n Mot. Remand at 7.)

The case was originally filed in the San Diego Superior Court on August 7, 2006 and August 4, 2006 by Plaintiff Marina Puchalski and Plaintiff Rajeev Chhibber respectively.  Plaintiffs amended the Complaint on August 28, 2006 to consolidate the cases (Pls.' First Am. Compl.)  On August, 1, 2008, Plaintiffs filed a Motion for Class Certification to broaden the definition of the proposed classes from the definition in the First Amended Complaint.  (Pls.' First Am. Compl.; Pls.' Mot. Remand at 3.)   Taco Bell removed this action based on the Class Action Fairness Act of 2005 (CAFA).  (Defs.' Removal.)  Plaintiffs now move to remand this action, arguing that two of the CAFA exceptions apply such that the San Diego Superior Court is the appropriate forum for this litigation.  (Pls.' P&A's re Mot. Remand at 1 (citing 28 U.S.C. § 1332(d)(3) and  28 U.S.C. § 1332(4)(B)).)  Specifically, Plaintiffs' assert that the action should be remanded pursuant to either CAFA's "home state" exception or in the alternative, to CAFA's "discretionary remand."  (Pls.' Reply in Supp. Mot. Remand.)

There is no dispute regarding the initial removal as both parties agree that the minimal diversity requirements created by CAFA are met.  (Pls.' P&A's re Mot. Remand at 1; Defs.' Removal at 4-9.)  Taco Bell opposes the Plaintiffs' Motion to Remand, arguing that federal jurisdiction is proper and that neither of the two CAFA exceptions raised by Plaintiffs apply.  (Defs.' Opp'n. Mot. Remand at 6-23.)

Plaintiffs claim they have met the threshold requirement of the "home state" exception, that a minimum of two-thirds of the class are domiciled in California.  (Pls.' Reply in Supp. Mot. Remand at 1.)  Plaintiffs now assert that the burden shifts to Taco Bell to prove that the class action Plaintiffs' domicile has changed.  (*Id.*)  Alternatively, Plaintiffs argue that the Court should exercise its discretion to remand the case because at least one-third of the class members were domiciled in

1   California as of August 2008.  (*Id.* at 7-10.)

2                                              **II.**

3                                       <u>**ANALYSIS**</u>

4          Section four of CAFA amended Title 28 of the United States Code section 1332 by adding

5   subsection (d).  Although this provision includes exceptions, it makes federal courts more accessible

6   to class action suits as it removes the complete diversity requirement, allowing the federal courts to

7   have jurisdiction over class actions if there is *any* diversity between any defendant and any member

8   of the plaintiff class.  28 U.S.C. § 1332(d)(2)(A).

9          Both parties agree that at least one member of the plaintiff class is a citizen of a State other

10  than California.  The question before the Court is whether a sufficient percentage of the class

11  members are California citizens, requiring remand to a state court, or alternatively, giving this Court

12  discretion to remand the case to state court.

13         **A.  Burden of Proof**

14         Much of the controversy surrounds the issue of who must prove the class members'

15  citizenship.  Both parties agree that the initial burden in proving the CAFA exceptions lies with the

16  party seeking remand, Plaintiffs.   *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir.

17  2007).  Plaintiffs provide evidence that at least two-thirds of the class members are citizens of

18  California (Pls.' P&A's re Mot. Remand at 1-2, 5-8), however, Taco Bell argues that Plaintiffs fail

19  to meet this burden.  (Defs.' Opp'n. Mot. Remand at 7-19).

20         **B.  CAFA Exceptions**

21         The CAFA exceptions require that a fraction of the putative class members "are citizens of

22  the State in which the action was originally filed."  28 U.S.C. 1332(d).  "To demonstrate citizenship

23  for diversity purposes a party must (a) be a citizen of the United States, and (b) be domiciled in a

24  state of the United States."  *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986).  To satisfy this burden

25  Plaintiffs must show that the requisite percentage of class members were domiciled in California as

26  of the date that federal jurisdiction became effective, August 1, 2008.  (28 U.S.C. § 1332(d)(7);

27  Defs.' Opp'n. Mot. Remand at 8 n.8.)

28         Therefore, the main issue before the Court regarding the decision to remand is whether or not

Plaintiffs have established that either (a) at least two-thirds of the putative class members were

                                              - 3 -

1  domiciled in California as of August 1, 2008 (per the "home state exception") or (b) greater than

2  one-third but less than two-thirds of the class members were domiciled in California as of August 1,

3  2008 (to invoke the "discretionary exception").  If this Court finds that at least two-thirds of the

4  members were domiciled in California it *must* decline to exercise jurisdiction.  28 U.S.C.

5  1332(d)(4)(B).  If this Court finds that less than two thirds but more than one-third of the class

6  members were domiciled in California it *may* decline jurisdiction "in the interests of justice and

7  looking at the totality of the circumstances[.]"  28 U.S.C. 1332(d)(3).

8       The initial burden of proof that a CAFA exception exists rests with Plaintiffs.  *See Serrano*,

9  478 F.3d at 1024.  Both parties agree that this is the appropriate standard to be used.  (Pls.' P&A's re

10  Mot. Remand at 10; Defs.' Opp'n. Mot. Remand at 7.)

11                                          **Domicile**

12       To determine where an individual is domiciled, evidence must demonstrate that the person

13  "has established a 'fixed habitation or abode in a particular place, and [intends] to remain there

14  permanently or indefinitely.'"  *Lew*, 797 F.2d at 749-50.  Stated another way, domicile is determined

15  by the individual's place of residence with the intent to remain.  *Kanter v. Warner-Lambert Co.*, 265

16  F.3d 853, 857-58 (9th Cir. 2001) (citing 749 *Lew*, 797 F.2d at 749).

17       Although residence alone may not prove domicile, (*see* Defs.' Opp'n. Mot. Remand at 8

18  (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)),  other factors may be

19  looked at to establish the requisite intent.  For example, "[a]mong the factors that are relevant to the

20  domicile determination are: current residence, voting registration and practice, driver's license and

21  automobile registration, location of personal and real property, location of bank accounts, location of

22  spouse and family, place of employment and business, and payment of taxes."  *Lockard v. Lockard*,

23  1993 U.S. App. LEXIS 37748 (9th Cir. 1993) (citing *Lew*, 797 F.2d at 750).

24       Both parties cite to *Lew* in their discussions of domicile.  In *Lew*, the court looked to

25  Supreme Court precedent for guidance on the appropriate burden of proof to impose on the parties.

26  *Lew*, 797 F.2d at 751 (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189

27  (1936)).  One Ninth Circuit case following *Lew* found that "[a] person's domicile does not

28  necessarily change with a change of residency."  *Branon v. Debus*, 289 Fed. Appx. 181, 183 (9th

1   Cir. 2008).  Rather, the element of intent ultimately decides domicile.  *See id.*  A person may reside

2   in one state but maintain their domicile in another if they intend to return to the initial state

3   permanently.  *See id.*  The court further noted that "domicile is evaluated in terms of "'objective

4   facts[.]'"  *Lew*, 797 F.2d at 750.

5        Once a domicile has been established it "is not lost until a new one is acquired."  *Barber v.*

6   *Varleta,* 199 F.2d 419, 423 (9th Cir. 1952); *Lew*, 797 F.2d at 750.  The plaintiff bears the initial

7   burden of proof regarding the requisite domicile to assert jurisdiction, however, "when a defendant

8   contests jurisdiction based on an alleged change of domicile, a presumption arises in favor of the old

9   domicile, and the defendant bears the burden to rebut this presumption."  *Lam Research Corp. v.*

10  *Deshmukh,* 157 Fed. Appx. 26, 27 (9th Cir. 2005) (citing *Lew*, 797 F.2d at 751).

11                          **Proof of Domicile:  Employment**

12       Here, all of the class members were employed by Taco Bell in California between August 2,

13  2002 and June 2006.  (Pls.' P&A's re Mot. Remand at 4.)  The issues in dispute arise from this

14  employment.  (*Id.* at 2-3.)  The putative class members presumably maintained residence in

15  California during their employment.  Therefore, the putative class members' employment can be

16  looked to as an "objective fact" used to determine domicile.  *See Lew*, 797 F.2d at 750.

17                          **Proof of Domicile:  Residence**

18       The class members' place of residence may also be looked to as an additional "objective

19  fact."  *Id.*  Both parties stipulated to use Rosenthal & Co., a neutral third-party claims administrator,

20  to provide addresses for the putative class members.  (Pls.' P&A's re Mot. Remand at Ex. 7, 4/3/07

21  Order at 5.)  Taco Bell provided Rosenthal with all of the putative class members' addresses and

22  these addresses were updated by Rosenthal twice.  (Pls.' P&A's re Mot. Remand at 13-14, Ex. 8,

23  Moser Decl.)

24       Now, two years later, Taco Bell asserts that the mailing addresses obtained by Rosenthal are

25  "unverified and *demonstrably unreliable* as proof of the class members' actual residence at the

26  relevant time."  (Defs.' Opp'n. Mot. Remand at 5.)  Further, Taco Bell asserts that Plaintiffs are

27  engaging in "Jurisdictional Gamesmanship."  (Defs.' Opp'n. Mot. Remand at 1.)  Taco Bell rests

28  this claim on the fact that two years after the suit was initially filed, Plaintiffs expanded the class

1  definition to include citizens from other states.  (Defs.' Opp'n. Mot. Remand at 1-3.)

2         However, the basis for this suit rests on allegations made by current and former employees of

3  Taco Bell *in California*.  Therefore, it is reasonable to assume that these individuals are/were

4  residents of California during their employment as salaried restaurant employees.  The date range

5  allotted in the Class Certification goes back to August 2, 2002 and ends upon "the date Taco Bell

6  reclassified [the employees] as non-exempt employees."  (Defs.' Opp'n. Mot. Remand at 3 (citing

7  Pls.' Mot. Class Certification at 1).)  Therefore, the initial classification limiting the individuals to

8  California employees does not appear to be an effort to engage in "Jurisdictional Gamesmanship,"

9  but rather an honest assessment that the majority of the class members' residence when the

10  Complaint and First Amended Complaint were filed was in fact California.

11         Both parties have engaged in extensive discovery over the past two years.  Taco Bell

12  provided the names, addresses and telephone numbers of the putative class members to Rosenthal &

13  Co. per the Superior Court's April 3, 2007 Order to provide the information to Plaintiffs' counsel.

14  (Pls.' P&A's re Mot. Remand at 5.)  The information was based on Taco Bell's employment records

15  (*Id.* at Ex. 8, Moser Decl.)  The initial records provided to Rosenthal in April 2007 included names

16  and addresses for 398 individuals.  (Pls.' P&A's re Mot. Remand at Ex. 8, Moser Decl., ¶ 2.)

17         The state Court's April 3, 2007 Order required Taco Bell to provide contact information

18  regarding "all putative class members (salaried Restaurant General Managers and salaried Market

19  Training Managers) employed after August 7, 2002 by defendant in the State of California at a

20  corporately-owned Taco Bell restaurant location who resided in California on August 7, 2006."

21  (Pls.' P&A's re Mot. Remand at Ex. 7, 4/3/07 Order at 3, ¶ 3.)  Within five days of receipt of this

22  contact information, Rosenthal & Co. performed an updated address search.  (*Id.* at 5, ¶ 2(c).)

23  Rosenthal & Co. then mailed a notice to each of the putative class members, giving them the chance

24  to exclude themselves from the suit.  (*Id.*)

25         Further, Rosenthal & Co. took precautionary steps to ensure that the non-disclosure letter

26  would be sent to the most current address of the putative class members by running "a national

27  change of address (NCOA) search and other credit and public source searches regarding the

28  addresses of the putative class members before mailing them the non-disclosure letter."  (Pls.'

P&A's re Mot. Remand at 6;  Ex. 7, 4/3/07 Order; Ex. 8, Moser Decl., ¶ 2).)  After this was done,

Rosenthal & Co. provided Plaintiffs with the database for putative class members, removing from

the list members who objected to the production of their contact information and those whose non-

disclosure letters were returned to Rosenthal & Co. as undeliverable.  (Pls.' P&A's re Mot. Remand

at 6.)

      Plaintiffs state they were provided with information on 357 of the 398 putative class

members and Taco Bell was provided with the information for the forty-one individuals included in

the group removed from the database provided to Plaintiff.  (*Id.*)  Rosenthal & Co. confirms that it

provided a list of 357 putative class members to both parties on May 30, 2007.  (Pls.' P&A's re Mot.

Remand at Ex. 8, Moser Decl., ¶ 3.)  Between September 25, 2008 and October 3, 2008 the parties

provided Rosenthal & Co. with additional information and Rosenthal & Co. adjusted the putative

class member list accordingly.  (Pls.' P&A's re Mot. Remand at Ex. 8, Moser Decl., ¶¶ 4-9.)

      On Oct. 6, 2008 Ron Moser, Senior Case Manager of Rosenthal & Co., provided an analysis

of these addresses.  (Pls.' P&A's re Mot. Remand at Ex. 8, Moser Decl., ¶10.)  The following break-

down of his analysis portrays that over two-thirds of the putative class members (P.C.M.) had

mailing addresses in California as of August 2008:

1)    **41 P.C.M.** whose contact information was NOT disclosed to the Plaintiffs' counsel because

      the individuals chose not to have their information disclosed or all notice packets were

      returned to USPS:

           ‣   17/ 41 were employed by Taco Bell in CA at that time

           ‣   3/ 41 had mailing addresses in a state <u>other than CA</u>

           ‣   **38/ 41 had mailing addresses in CA**:

               27/ 41 - included because returned request not to disclose

                  1/ 27 had a mailing address <u>other than CA</u>

                  **26/ 27 had CA for all mailing addresses**

               14/ 41 - included because notice packets returned to USPS

                  2/ 14  had a mailing address <u>other than CA</u>

                  **12/ 14  had CA for all mailing addresses**

2)   **357 P.C.M.** whose contact information WAS disclosed:

> ▸   136/ 357 were employed by Taco Bell in CA at that time

> ▸   30/ 357  had a mailing address in a state <u>other than CA</u>

> ▸   **327/ 357 had CA for all mailing addresses**

**3)   18 P.C.M.** added Sept. 25, 2008

> ▸   0/ 18 employed by Taco Bell in CA at that time

> ▸   0/ 18 have CA as mailing addresses as of Aug. 2008

**Total P.C.M. = 416:**

**51 had mailing addresses in a state other than CA**

**365 had one or more addresses, ALL of which were in the State of CA**

<u>**365/416 = 87.7 %**</u>

Note:  **153 employed by Taco Bell in CA**

(Pls.' P&A's re Mot. Remand at Ex. 8, Moser Decl., ¶10.)

Taco Bell asserts that two of the 365 putative class members do not in fact reside in California as one is employed by Taco Bell in Texas and one is deceased.  (Defs.' Opp'n. Mot. Remand at 5.)  Kevin Shaikh moved from California to Texas in June 2008, with the intent to remain in Texas.  (Shaikh Decl.)  Therefore, as of August 2008 he was not a California resident.  This takes the 365 calculation down to 364.

The death record provided by Taco Bell states that Gilbert F. Syfu died in October 2006 in San Diego, California.  (Cole Decl., Ex. A, Death Record of Gilbert F. Syfu.)  There is no evidence that Mr. Syfu's estate intends to take over his rights and obligations and therefore Mr. Syfu should be removed from the putative class unless such an intention is presented.  Therefore, the putative class number should be reduced from 416 to 415.  This results in the same percentage of putative class members as was provided by Mr. Moser:  **364/415 = 87.7 %**.

Taco Bell attempts to bolster the argument that mailing addresses provided by Rosenthal are "unverified and *demonstrably unreliable* as proof of the class members' actual residence at the relevant time" by providing information that certain individual putative class members had mailing addresses outside of California as well as within California.  (Defs.' Opp'n. Mot. Remand at 5-6).

1  Taco Bell also asserts that the reliability of the addresses found should be questioned because

2  "Rosenthal's list contains 615 addresses for 416 class members."

3          There is no dispute that Rosenthal has located multiple addresses for putative class members.

4  Indeed, Moser's Declaration differentiates between putative class members with *only* California

5  addresses and those who have even one address outside of California.  (Pls.' P&A's re Mot. Remand

6  at Ex. 8, Moser Decl., ¶10.)  Those class members with addresses outside of California have been

7  excluded from the percentage distribution as discussed *supra*.

8          Taco Bell argues that information provided by class members to Rosenthal & Co. is

9  inaccurate and irrelevant.  (Defs.' Opp'n. Mot. Remand at 5-6.)  However, a majority of the

10  information provided to Rosenthal was provided by Taco Bell from its own employment records.

11  (Pls.' P&A's re Mot. Remand at Ex. 8, Moser Decl., ¶ 2.)  Even if this allegation regarding

12  Plaintiffs' information is true, Rosenthal & Co. runs its own update search to ensure the accuracy of

13  the addresses.  (*See* Pls.' P&A's re Mot. Remand at Ex. 8, Moser Decl..)

14                                              **Conclusion re Domicile**

15          The Court will use the information source agreed to by the parties, Rosenthal & Co.  (Pls.'

16  P&A's re Mot. Remand at Ex. 7, 4/3/07 Order at 5.)  As Taco Bell has provided information which

17  calls into question the residence of two individuals, those individuals will be removed from the

18  calculation.  The percentage of putative class members who resided in California as of August 1,

19  2008 is therefore 87.7 percent.  (Discussed *supra*.)

20          Although residence does not equate domicile, it can be used as an objective factor.  *See Lew*,

21  797 F.2d at 750.  In this case all of the putative class members were employed by Taco Bell in

22  California.  Further, there is evidence that 153 of the putative class members are still employed by

23  Taco Bell in California.  (Pls.' P&A's re Mot. Remand at Ex. 8, Moser Decl., ¶10.)  As to the

24  remaining class members, no evidence has been presented to properly dispute their California

25  citizenship.  Therefore, the old domicile will be considered until an intent to remain in another state

26  is shown by Taco Bell.  *Lam Research Corp.,* 157 Fed. Appx. at 27 (9th Cir. 2005) (citing *Lew*, 797

27  F.2d at 751).

28          Requiring each individual class member to sign an affidavit stating their intent to remain in

California is therefore not necessary.  Further, additional information, aside from current/former employment and residence, is protected in California (Pls.' Reply in Supp. Mot. Remand at 6-7; Jones Decl. ¶ 4.).  Thus, Plaintiffs may not be required to provide such information.  Therefore, the putative class members' current and/or former employment with Taco Bell in California, coupled with the information provided by Rosenthal & Co., allows the Court to conclude that 87.7 percent of the putative class members were domiciled in California as of August 1, 2008.

### 1. Home State Exception

Section 1332(d)(4)(B) provides that a district court must decline jurisdiction over a class action if "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed."  28 U.S.C. § 1332(d)(4)(B).  Federal jurisdiction is inappropriate because "virtually all of the parties in such cases (both plaintiffs and defendants) would be local, and local interests therefore presumably would predominate."  S. Rep. No. 109-14, at 35 (2005).

Both parties stipulate that the primary Defendant, Taco Bell, is a resident of California, the State in which the action was originally filed.  (Pls.' P&A's re Mot. Remand at 1; Defs.' Opp'n. Mot. Remand at 7.)  The issue disputed by the parties in this case is whether two-thirds of the plaintiff class members are citizens of California, the State in which the action was originally filed.  Plaintiffs assert that over two-thirds of the plaintiff class members are citizens of California as exemplified by the findings of Rosenthal & Co., the third party agency agreed to by both parties.  (Pls.' P&A's re Mot. Remand at 1-2, 5-9.)  Taco Bell argues that this evidence is "inaccurate, unverified and unreliable." (Defs.' Opp'n. Mot. Remand at 4-6)  However, as stated *supra*, Taco Bell should have voiced this concern earlier in the proceeding and should not have stipulated to use Rosenthal & Co. if the accuracy of the information provided or the quality of service was in question.  The Court finds the data provided by Rosenthal accurate and reliable.

Plaintiffs must prove that two-thirds of the putative class members were domiciled in California as of August 1, 2008.  28 U.S.C. § 1332 (d)(4)(B).  Here, Plaintiffs must show that 277 or more of the 416 putative class members were citizens of California as of August 1, 2008.  (Defs.' Opp'n. Mot. Remand at 7.)  Rosenthal & Co. has provided proof that 365 of the 416 (or 364 of 415

as discussed *supra*) putative class members resided in California as of August 2008.  This information coupled with the current and/or previous employment in California supports the notion that 87.7 percent (well over two-thirds) of the putative class members were domiciled in California as of August 2008.

Therefore, the Court must remand the case to the San Diego Superior Court pursuant to CAFA's Home State exception.  28 U.S.C. 1332(d)(4)(B).

### 2.    Discretionary Exception

Even if the Court determined that less than two-thirds of the class members were citizens of California as of August 1, 2008, the Court could then look to Section 1332 to determine whether or not to remand the case.  Section 1332(d)(3) gives the court discretion to decline jurisdiction over the matter if "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed" and the court determines that such a decision would be "in the interests of justice" after "looking at the totality of the circumstances[.]"  28 U.S.C. § 1332(d)(3).

Plaintiffs have identified at least one-third of the proposed plaintiff class members as citizens of California.  (Pls.' Reply in Supp. Mot. Remand at 8 n.5.)  At least one-third (139 of 416) of the putative class members have California residences (365 of 416), and Taco Bell's employment records show that 153 of these members were employed by Taco Bell in California as of August 2008.  (*Id.* at 4; *see also* Pls.' P&A's re Mot. Remand at Ex. 8, Moser Decl., ¶10.)  Therefore, 153 of the putative class members (exceeding the requisite one-third) are citizens of California.

However, as "the numbers alone may not always confirm that the litigation is more fairly characterized as predominately interstate in character[,]" the Court is given discretion to decline jurisdiction and will consider six factors to make such a determination.  S. Rep. No. 109-14, at 35 (2005).  The Court considers:

(A) whether the claims asserted involve matters of national or interstate interest;

(B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;

(C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;

(D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;

(E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and

(F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

28 U.S.C. § 1332(d)(3)(A)-(F).

### a. Intrastate Interest

Here the claims asserted do not involve matters of national or interstate interest. Rather, the claims made against Taco Bell involve intrastate interest as they refer to California's Labor Code and Business and Professions Code, as well as employment and services offered within the State of California. (Pls.' P&A's re Mot. Remand at 15.) Further, the claims in this case are against Taco Bell in California for violations that occurred within the state. Therefore the suit should be handled by a California state court, as the issue in dispute impacts the local economy and local residents, more than they implicate national interests. Taco Bell does not dispute that this factor is in favor of remand.

### b. State Law

If the Court "concludes that the laws of the state in which the action was filed will apply to the entire controversy, that factor will favor allowing the state court to handle the matter." S. Rep. No. 109-14, at 35 (2005). Here, the claims asserted will be governed by the laws of California, the state in which the action was originally filed. No other state's laws are called into question and no federal claims have been raised. Again, Taco Bell does not dispute that this factor is in favor of remand.

### c. Federal Jurisdiction

It is apparent that Plaintiffs do not wish to have the case remain in federal court. However, there is no evidence that Plaintiffs "have used their class definition to play jurisdictional games." (Defs.' Opp'n. Mot. Remand at 20.) Rather, Plaintiffs admit that the action was pleaded in a manner to avoid federal jurisdiction and have attempted to alter the class to further specify its members and

1    to avoid inaccuracies.   (Pls.' P&A's re Mot. Remand at 16.)

2         Senate Report 109-14, the Class Action Fairness Act of 2005:  Dates of Consideration and

3    Passage, states that gerrymandering has occurred if the plaintiffs seek to avoid federal jurisdiction

4    "by leaving out certain potential class members or claims."  S. Rep. No. 109-14, at 36 (2005).  Here,

5    Plaintiffs' putative class is instead a "'natural' class - a class that encompasses all of the people and

6    claims that one would expect to include in a class action [.]" *Id.*  The putative class was originally

7    restricted to California residents as the class deals with individuals employed or formerly employed

8    by Taco Bell *in California*, therefore the original class designation was "natural," and upon

9    receiving information that the class had changed it appears that Plaintiffs altered the designation in

10   an attempt to define the class with specificity.  Therefore, this factor is also in favor of remand.

11   **d.  Nexus**

12        This action was brought in a forum with a distinct nexus with the class members, the alleged

13   harm, and the defendants.  28 U.S.C. § 1332(d)(3)(D).  The intent of this factor is to address "the

14   filing of lawsuits in out-of-the-way 'magnet' state courts that have no real relationship to the

15   controversy at hand."  S. Rep. No. 109-14, at 36 (2005).  However, here a majority of the class

16   members are citizens of California, the alleged harm occurred in California, and the primary

17   defendant is a California corporation with its principal place of business in California.  (Pls.' P&A's

18   re Mot. Remand at 16-17; Not. Removal at 5.)  Therefore, the requirement of a distinct nexus is met

19   and the local court has a stronger relationship to the controversy than the federal court.  Again, Taco

20   Bell does not dispute that this factor is in favor of remand.

21   **e.  Citizenship of Class Members**

22        The number of California citizens, the State in which the action was originally filed, "is

23   substantially larger than the number of citizens from any other State, and the citizenship of the other

24   members of the proposed class is dispersed among a substantial number of States."  28 U.S.C. §

25   1332(d)(3)(E).  There is no evidence that class members who are not residing in California are

26   limited to one particular state.  Rather, the only evidence that putative class members may or may

27   not be citizens of other states provides that "thirty-five persons in the proposed class . . . worked for

28   Taco Bell in states other than California since 2000."  (Nichols Decl. ¶ 5.)  There is no mention of

1   those individuals' place of employment as of August 2008, nor is there any mention of those

2   individuals' intent to remain in a state other than California.  *See id.*

3          Further, there is no clear argument made for this factor by Taco Bell regarding what other

4   states may account for more than five percent of the class members.  S. Rep. No. 109-14, at 36

5   (2005).  Therefore, any non-California citizen putative class members "are widely dispersed among

6   many other states" which "suggest that the interest of the forum state in litigating the controversy are

7   preeminent (versus the interests of any other state)."  *Id.*  Again, Taco Bell does not dispute that this

8   factor is in favor of remand.

9                    **f.  Similar Claims**

10          Courts may use this factor to ensure "efficiency and fairness: to determine whether a matter

11   should be subject to federal jurisdiction so that it can be coordinated with other overlapping or

12   parallel class actions . . . pursuant to the federal courts' multidistrict litigation process as established

13   by 28 U.S.C. § 1407."  S. Rep. No. 109-14, at 36 (2005).  Title 28, section 1407 provides that

14   pretrial proceedings may be coordinated or consolidated "[w]hen civil actions involving one or more

15   common questions of fact are pending in different districts" and the judicial panel on multidistrict

16   litigation determines "that transfers for such proceedings will be for the convenience of parties and

17   witnesses and will promote the just and efficient conduct of such actions."  28 U.S.C. § 1407(a).

18   Further, if "the state court appears to be positioned to handle the case in a manner that is respectful

19   of state law variations, that consideration would favor remand of the matter to the state court."  Sen.

20   R. No. 109-14, at 37 (2005).

21          Four other class action cases have been filed against Taco Bell "in the last three years."  S.

22   Rep. No. 109-14, at 36 (2005); 28 U.S.C. 1332 (d)(3)(F).  Two cases were filed in the Superior

23   Courts:  *Levya, et al. v. Taco Bell Corp., et al.*, Case No. BC392733, pending in the Los Angeles

24   County Superior Court; and *Loraine Naranjo, et al. v. YUM! Brands, Inc., et al.*, Case No. 30-2008-

25   00114292, pending in the Orange County Superior Court.  (Def.'s 12/05/08 Notice of Related Cases

26   at 1.)  YUM! Brands, Inc. is Taco Bell's parent company.  (*Id.* at 1 n.1.)

27          Two actions have also been filed in the United States Court for the Eastern District of

28   California:  *Medlock v. Taco Bell et al.*, Case No. 1:07-cv-01314-OOW-DLB and *Hardiman v. Taco*

1   *Bell et al.*, Case No. 1:08-cv-010-81-OWW-GSA.  (Def.'s 11/03/08 Notice of Related Cases at 1.)

2   These actions assert "similar claims on behalf of . . . other persons."  28 U.S.C. § 1332(d)(3)(F).

3   The claims are similar as each assert "claims for unpaid overtime (California Labor Code § § 510

4   and 1198)[], missed meal periods (California Labor Code § § 226.7 and 512)  and violations of

5   California Business and Professions Code § § 17200 <u>et seq.</u> on behalf of employees of company-

6   owned Taco Bell restaurants in California."  (Defs.' Opp'n. Mot. Remand at 21.)

7          However, the questions of fact in each of the cases differ significantly.  The plaintiffs in

8   *Medlock* seek to certify a class of "[a]ll non-exempt or hourly paid employees who have been

9   employed by Defendant in the State of California within four years prior to the filing of this

10   complaint until resolution of this lawsuit."  (Pls.' P&A's re Mot. Remand at Ex. 13, "Medlock FAC"

11   ¶ 19.)  Similarly, the plaintiffs in *Hardiman* seek to certify a class consisting of "non-exempt or

12   hourly employees."  (*Id.* at Ex. 14, "Hardiman Complaint" ¶¶ 16-18.)  Conversely, the Plaintiffs in

13   the present case assert claims that "all stem from Taco Bell's alleged misclassification of its *salaried*

14   restaurant managers."  (Pls.' Reply in Supp. Mot. Remand at 9.)  Not only do the claims differ

15   factually in this manner, but the class time frames also differ.  *Id.*  Therefore, these cases are

16   unlikely to be consolidated.

17          Four of the six factors considered by the Court are not disputed by Taco Bell.  The two

18   factors that are disputed by Taco Bell also weigh in favor of remand.  Therefore, even if the Court

19   determined that less than two-thirds of the putative class members were domiciled in California,

20   there is ample evidence to support the contention that at least one-third of the putative class

21   members were domiciled in California as of August 1, 2008 and that the interests of justice and the

22   totality of the circumstances allow the Court to use its discretion and decline jurisdiction over this

23   matter.  28 U.S.C. 1332 (d)(3).

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1

**III.**

2

**CONCLUSION**

3

     For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion and **ORDERS** this case

4

remanded to the Superior Court of California for the County of San Diego.  The Clerk of the Court

5

shall transfer the case file forthwith.

6

     **IT IS SO ORDERED.**

7

DATED:  March 17, 2009

8

                            Hon. Michael M. Anello

9

                            United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 16 -